IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| MENION MARQUIS SAMUELS, | § | |
| Institutional ID No. 65190 | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:23-CV-00132-BU |
| | § | |
| FNU HENRY, *et al*., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
OF THE UNITED STATES MAGISTRATE JUDGE**

Pro se Plaintiff Menion Marquis Samuels, a pretrial detainee at the Taylor County Detention Center (TCDC), brings this action under 42 U.S.C. § 1983 against Defendants Sgt. Kevin Henry, Lt. Tony Pollock, Capt. Angel Gonzales, Chief Tim Trawick, Sheriff Ricky Bishop, and 30 unnamed officers ("John Does") (when referring collectively to all defendants, "the Defendants"). Samuels's claims are subject to preliminary screening under 28 U.S.C. §§ 1915, 1915A because the Court granted Samuels leave to proceed *in forma pauperis*, Dkt. No. 6, and Samuels brings his claims against government officials.

For the reasons explained below, the undersigned RECOMMENDS that the Court order service of Samuels's claims in part and dismissal of his claims in part.

**I.  JURISDICTION**

The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Samuels filed his claims under 42 U.S.C. § 1983. Dkt. No. 1. The undersigned has the authority to

1

enter these Findings, Conclusions, and Recommendations after United States District Court Judge James Wesley Hendrix transferred Samuels's case to the undersigned for preliminary screening. Dkt. No. 7; 28 U.S.C. § 636(b)(1)(B). Samuels has not consented to the undersigned exercising the full jurisdiction of this Court.

## II. FACTUAL BACKGROUND

For purposes of screening a plaintiff's complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, a court must accept well-pleaded factual allegations as true and construe them in a way that most favors the plaintiff. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017). A court may look to the plaintiff's allegations in his or her complaint, responses to a questionnaire, authenticated prison or jail records, and testimony provided at a *Spears* hearing. *See Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999); *see also Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may consider authenticated medical and prison records).

Samuels claims to be a devout Muslim. He says that the Defendants have prevented him from practicing his Islamic faith by: (1) taking his Quran and prayer rug when he arrived at TCDC; (2) denying his request for an Islamic prayer schedule; (3) failing to provide him with suitable areas for prayer; (4) denying his request to purchase a Quran using funds from his trust account; (5) denying him access to prayer oils, a kufi, Muslim reading materials and television programming, dedicated Muslim services, and religious meals; and (6) preventing him from praying with fellow Muslims. Dkt. No. 12 at 2, 4–6.

Samuels also claims that Christian detainees receive greater access to religious materials and services compared to other faiths. *Id.* at 7.

2

## III.  THE PARTIES

Samuels brings his claims against Taylor County Sheriff Ricky Bishop, Sgt. Kevin Henry, Lt. Tony Pollock, Capt. Angel Gonzales, Chief Tim Trawick,[1] and 30 John Does. Samuels seeks relief in the form $1.3 million in damages as well as injunctive and declaratory relief to allow him access to Muslim services, a prayer rug, kufis, prayer oil, religious texts and pamphlets, and to have TCDC recognize Muslim holy days. Dkt. No. 12 at 9.

Samuels does not specify whether he sues the Defendants in their official or personal capacities. But he alleges personal involvement on the parts of all Defendants except Bishop. *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992) (in order to state a claim, "a plaintiff bringing a section 1983 action must specify the personal involvement of each defendant.").

Bishop, however, cannot be held liable under § 1983 for the actions or inactions of his subordinates. Section 1983 does not authorize supervisory liability based on *respondeat superior* or any theory of vicarious liability. *See Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999) ("Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983."); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability.") (citations omitted). "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts

---

[1] Samuels spells this individual's name as Tim Traywick, however, the authenticated records provided to the Court show that the name is spelled Tim Trawick. **The Clerk is directed to conform the docket accordingly.**

that cause constitutional deprivation; or (ii) implement unconstitutional policies that caus-ally result in plaintiff's injury." *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996).

Samuels claims that Bishop implemented unconstitutional practices or policies that violated his rights, implicating Bishop's personal capacity. Additionally, as Sheriff, Bishop may be held liable in his official capacity as the TCDC policymaker, discussed further below. Thus, the undersigned will consider Samuels's claims against Bishop as being brought in both his official and personal capacities, and the claims against all other De-fendants as being brought in their personal capacities only.

Samuels alleges that the Defendants have violated his rights under the First Amend-ment's Free Exercise and Establishment Clauses as well as the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc et seq. Dkt. No. 1 at 4–5. Ad-ditionally, because Samuels complains of policies that he says infringe upon his religious rights, the undersigned construes his pleadings as bringing a claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). The undersigned also construes Samuels's allegations that Muslim detainees receive lesser access than Christian detainees to the means necessary to exercise their faith as bringing a claim under the Fourteenth Amendment's Equal Protection Clause.

## IV.  LEGAL STANDARDS

A court must dismiss a complaint filed by a prisoner against a government entity or employee if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b) (applying section to any suit by a prisoner

against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks an arguable basis in law if it contains indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Dismissal for failure to state a claim—whether under Section 1915(e)(2)(B)(ii), Section 1915A(b)(1), or Rule 12(b)(6)—"turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam)). Thus, if a plaintiff "plead[s] facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief, the claims should not be dismissed merely because the plaintiff fails to articulate the proper legal theory that otherwise makes those facts actionable in court. *Johnson*, 574 U.S. at 11–12 (citing Fed. R. Civ. P. 8(a)(2)–(3), (d)(1), (e)).

Courts accept *well-pleaded* factual allegations as true. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (emphasis added). This means the factual allegations, while not required to be detailed, must amount to more than mere labels, conclusions, or a statement of the legal elements of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Chhim*, 836 F.3d at 469.

For claims to be substantively plausible, a plaintiff need not establish that the pleaded facts probably occurred as alleged, but the facts must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc*., 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678–679). Even pro se plaintiffs must plead facts that raise the right to relief above a speculative level. *Chhim*, 836 F.3d at 469 (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). And when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When evaluating a complaint under these standards, courts liberally construe the pleadings of pro se plaintiffs, holding their complaints to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). But "liberal construction does not require that the Court . . . create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Ultimately, "'[d]etermining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920

6

F.3d 890, 899 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).

## V. ANALYSIS

Samuels's pleadings allege violations of his rights under First Amendment's Free Exercise and Establishment Clauses, RLUIPA, and the Fourteenth Amendment's Equal Protection Clause. Additionally, Samuels's pleadings raise a *Monell* claim.

To state a claim under § 1983, Samuels must "allege facts showing that a person, acting under color of state law, deprived the plaintiff of a right, privilege or immunity secured by the United States Constitution or the laws of the United States." *Bryant v. Mil. Dep't of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010). A suable "person" under § 1983 includes: (1) state and municipal officials sued in their personal capacities, *Hafer v. Melo*, 502 U.S. 21, 27 (1991); (2) municipal officials sued in their official capacities, *Monell*, 436 U.S. at 690 n.55; (3) municipal entities, *id.* at 690; and (4) private persons who are engaged in state action, *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980).

But to hold a municipality liable under § 1983 "requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 866 (5th Cir. 2012) (en banc) (citations omitted).

Notably, the Supreme Court expressly rejected *respondeat superior* liability under Section 1983, including in the context of municipal liability, because of the statutorily required *actual* culpability—versus constructive or vicarious culpability. *Monell*, 436 U.S. at 693; *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415 (1997) (discussing that the municipal

liability inquiry under Section 1983 should not collapse into a *respondeat superior* analysis).

An "official policy" may take the form of a formal policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmakers or by an official to whom the lawmakers have delegated policymaking authority. *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003). In addition, an official policy may also be in the form of "[a] persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that," in effect, "fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam). In such cases, the custom or practice has the "force of law." *See Connick v. Thompson*, 563 U.S. 51, 61 (2011).

But to establish a particular practice as a widespread or persistent enough as to amount to a policy for Section 1983 purposes, Smith must show that there was "a pattern of abuses that transcends the error made in a single case." *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001). Typically, a single "act is not itself a custom." *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002). Isolated violations are not usually viewed as the "persistent, often repeated, constant violations, that constitute custom and policy" as required for municipal section 1983 liability. *See Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984). Moreover, "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question."

*Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (footnotes and citations omitted).

Finally, in limited circumstances, "[o]ne way of establishing liability is to show that a policymaker ratified the acts of a subordinate." *Young v. Bd. of Supervisors of Humphreys Cnty., Miss.*, 927 F.3d 898, 903 (5th Cir. 2019). However, this theory is limited to "extreme factual situations." *See Peterson v. City of Fort Worth, Texas*, 588 F.3d 838, 847 (5th Cir. 2009). And "unless the subordinate's actions are sufficiently extreme—for instance, an obvious violation of clearly established law—a policymaker's ratification or defense of his subordinate's actions is insufficient to establish an official policy or custom." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009).

### A.    Samuels has stated a plausible Free Exercise Clause claim.

The First Amendment's Free Exercise Clause requires that prisoners[2] have reasonable opportunities "to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty." *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972) (per curiam). Whether a prison or detention center has violated that guarantee depends upon whether an action or regulation is "reasonably related to legitimate penological interests. *Mayfield v. Texas Dep't of Crim. Just.*, 529 F.3d 599, 607 (5th Cir. 2008). This latter inquiry is beyond the scope of preliminary screening, so the undersigned focuses solely on the first part of this claim.

---

[2] Although Samuels has not been found guilty or innocent at this time, the undersigned uses "prisoner" as it is defined in 28 U.S.C. § 1915(h) which includes "any person incarcerated or detained in any facility who is accused of . . . violations of criminal law . . . ."

Here, Samuels claims that the Defendants have denied him a reasonable opportunity to exercise his religious faith because they: (1) took his Quran and prayer rug when he arrived at TCDC; (2) denied his request for an Islamic prayer schedule; (3) failed to provide him with suitable areas for prayer; (4) denied his request to purchase a Quran using funds from his trust account; (5) denied him access to prayer oils, a kufi, Muslim reading materials and television programming, dedicated Muslim services, and religious meals; and (6) prevented him from praying with fellow Muslims.

Samuels has alleged facts plausibly showing that the Defendants, acting under color of state law, deprived him of his right to the free exercise of his religion, a right secured by the United States Constitution. *See Bryant,* 597 F.3d at 686. These allegations, taken as true, state plausible Free Exercise Clause claims against the Defendants in their personal capacities. *See Booker v. McDuffie*, No. 5:18-CV-208-BQ, 2019 WL 5751479, at *2–3 (N.D. Tex. Aug. 29, 2019), *report & rec. adopted*, 2019 WL 5742766.

Samuels has also plausibly alleged that a policymaker (the Sheriff) enforced a policy (denying Muslim inmates the above religious accommodations), and that policy was the moving force behind the violation of his Free Exercise Clause rights. Thus, Samuels has also stated a Free Exercise Clause claim under *Monell* against Sheriff Bishop in his official capacity.

## B.    Samuels has stated a plausible Establishment Clause claim.

The First Amendment's Establishment Clause, via the Fourteenth Amendment, guarantees that a State "shall make no law respecting an establishment of religion." U.S. Const. amend. I. "The clearest command of the Establishment Clause is that one religious

10

denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982).

Here, Samuels claims the Defendants violated the Establishment Clause because TCDC provides access to Christian books and television programs, and a special meal on Christmas, but refuses to provide similar opportunities to Muslims. Dkt. No. 1 at 6. At this early stage, this is sufficient to state a plausible claim under the Establishment Clause against the Defendants in their personal capacities. *See Booker*, 2019 WL 5751479, at *4. Samuels has also stated a plausible Establishment Clause claim against Sheriff Bishop under *Monell*.

### C.    Samuels has stated a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA).

Congress enacted RLUIPA to provide greater protections than the rights provided under the First Amendment. *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005). RLUIPA mandates that:

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a).

To benefit from the protections of RLUIPA, a plaintiff must first show that: (1) their religious exercise is grounded in a sincerely held religious belief and (2) that the government's action substantially burdens that exercise. *Ali v. Stephens*, 822 F.3d 776, 782–83 (5th Cir. 2016) (citing *Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015)). RLUIPA defines "re-

ligious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A). The government imposes a substantial burden when "it truly pressures the adherent to significantly modify his religious behavior and significantly violates his religious beliefs." *Adkins v. Kasper*, 393 F.3d 559, 570 (5th Cir. 2004).

Here, Samuels has alleged that he has a sincerely held religious belief in practicing his Islamic faith by reading the Quran, praying with the appropriate religious garb and materials, and having access to prayer services. He also alleges that the Defendants have substantially burdened his religious exercise by denying him access to religious texts, materials, and services. These allegations meet the initial burden for showing a plausible RLUIPA claim against Bishop in his official capacity under *Monell*.

Notably, however, RLUIPA does not provide for a private right of action against a defendant in their personal capacity. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316 (5th Cir. 2009). Thus, the Court should dismiss his RLUIPA claim against the Defendants in their personal capacities as frivolous and for failure to state a claim.

### D.     Samuels has stated a plausible Equal Protection Clause claim.

To bring an independent equal protection claim, Samuels must show that "he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001). Demonstrating discriminatory intent requires a showing that a decisionmaker "selected a particular course of action at least in part because of, and not simply

12

in spite of, the adverse impact it would have on an identifiable group." *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995).

Samuels's allegations that Christian detainees receive greater access to religious items and opportunities compared to Muslim detainees is sufficient to state a plausible equal protection claim against the Defendants in their personal capacities, and Bishop also in his official capacity. *See Booker*, 2019 WL 5751479, at *4–5.

### E. Samuels cannot pursue compensatory damages because he has not suffered a physical injury.

42 U.S.C. § 1997e(e) bars a prisoner from seeking compensatory damages where the prisoner has not suffered a physical injury. *Mayfield v. Texas Dep't of Crim. Just.*, 529 F.3d 599, 605 (5th Cir. 2008). Samuels has not alleged a physical injury as the result of the Defendants' actions, therefore, he cannot pursue compensatory damages for his claims. Nonetheless, Samuels may still pursue nominal damages against the Defendants as well as punitive damages for each of his claims except his claim under *Monell*. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266–72 (1981) (holding *Monell* claims do not allow for punitive damages).

## VI. CONCLUSION

For the reasons explained above, the undersigned RECOMMENDS that the Court DISMISS Samuels's RLUIPA claim against the Defendants in their personal capacities and strike his request for compensatory damages because he has not alleged a physical injury.

The undersigned also RECOMMENDS that the Court ORDER service of Samuels's claims and require Defendants to answer or otherwise respond.

Additionally, because it appears that the Defendants are employees of Taylor County and are likely to be represented by the County. Therefore, if the Court accepts the undersigned's recommendations, the undersigned further RECOMMENDS that the Court direct the Clerk of Court to transmit to Taylor County (1) a copy of its Order, (2) a copy of Samuels's most recent complaint and any supplements thereto, and (3) a Notice and Election Regarding Consent to Proceed Before a United States Magistrate Judge.

## VII.  RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendations must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendations where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

ORDERED this 31st day of January 2024.

_____

JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE