UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| MENION MARQUIS SAMUELS, Institutional ID No. 65190,<br><br>       Plaintiff,<br><br>v.<br><br>KEVIN HENRY, *et al.*,<br><br>       Defendants. | No. 1:23-CV-00132-H |

**OPINION AND ORDER**

  Defendants Kevin Henry, Tony Pollock, Angel Gonzales, Tim Trawick, and Ricky Bishop filed a Motion for Summary Judgment and Motion for Judgment on the Pleadings with a supporting brief. Dkt. Nos. 28, 29. The defendants argue generally that they are entitled to summary judgment because the plaintiff has not pled enough facts to overcome their assertion of qualified immunity. *Id.* Plaintiff responded. Dkt. No. 30.

  After reviewing the record, the parties' briefing, and the applicable law, the Court denies the defendants' motion. The plaintiff has sufficiently alleged and supported his allegations that the defendants violated his clearly established rights under the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act (RLUIPA). Thus, as explained below, the Court denies the defendants' motion.

**1. Background**

  Plaintiff Menion Marquis Samuels, a self-represented pretrial detainee in the Taylor County Detention Center (TCDC) proceeding *in forma pauperis*, filed this civil-rights complaint under 42 U.S.C. § 1983. Dkt. No. 1. Plaintiff claims that Defendant Bishop, as Sheriff of Taylor County, implemented unconstitutional practices or policies for TCDC that

resulted in the denial of his religious rights. *See* Dkt. No. 14. More specifically, he claims that each of the defendants has prevented or burdened his practice of his Islamic faith by (1) taking his Quran and prayer rug when he arrived at TCDC; (2) denying his request for an Islamic prayer schedule; (3) failing to provide him with suitable areas for prayer; (4) denying his request to purchase a Quran using funds from his inmate trust account; (5) denying him access to prayer oil, a kufi, religious meals, Islamic services, and Islamic reading materials and television programming; and (6) preventing him from praying with fellow Muslims.[1] *See* Dkt. Nos. 12, 14. He details the various ways that these restrictions have burdened or prevented his religious practices. Dkt. No. 12.

He also claims that, in contrast, the defendants have accommodated Christian inmates by providing them with worship services, Bibles and other Christian reading materials and programming, and religious meals. Dkt. No. 12. He asserts that Christian books are readily available, but he cannot purchase a Quran using his own funds. *Id.* He also points out that Christians receive a yearly Christmas meal, but he was denied a religious meal to celebrate the end of Ramadan. Dkt. No. 1. And he asserts that Christian group services are available daily on Trinity Broadcasting Network, but Muslims are not permitted to meet, worship, or pray together. *Id.*; Dkt. No. 12.

He seeks monetary relief as well as equitable relief.[2] Dkt. No. 1, 12. Specifically, he asks for Muslim Jummah services, an Eid al-Fitr meal to celebrate the end of Ramadan, and

---

[1] He explains that Defendants Henry and Trawick denied his request for an Eid al-Fitr meal, Defendants Pollock and Trawick denied him access to his prayer rug, Defendant Gonzales denied his request to purchase a Quran with his own funds, and Defendant Bishop implemented all of the policies and practices in place that prevent Muslims from practicing their faith, and he has refused to change those policies and practices. Dkt. No. 12 at 12.

[2] The Court dismissed Plaintiff's claim for compensatory damages, but he maintains claims for nominal and punitive damages as well as injunctive relief.

for access to his prayer rug, kufi, prayer oil, Islamic pamphlets, and other Islamic reading materials including a Quran. Dkt. No. 12 at 11.

After an initial review, the case was transferred to the United States Magistrate Judge for additional screening under 28 U.S.C. §§ 1915(e) and 1915A. Dkt. No. 7. The United States Magistrate Judge used a questionnaire to further develop the factual basis of Plaintiff's complaint. *See Watson v. Ault*, 525 F.2d 886 (5th Cir. 1976). Plaintiff's responses to the questionnaire, Dkt. No. 12, "are an integral part of [his] complaint and not a separate, independent pleading." *Id.* at 892.

At the conclusion of judicial screening, the Magistrate Judge found that Plaintiff had stated sufficient facts to plausibly allege violations of his rights under the Free Exercise and Establishment Clauses of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and RLUIPA. As a result, the Magistrate Judge recommended that the Court proceed with service of process on these claims and require the defendants to answer Plaintiff's complaint or otherwise respond. Dkt. No. 14. The Court accepted in relevant part[3] the Magistrate Judge's FCR. Dkt. No. 16.

The Court directed service on the defendants and ensured that they received a copy of the relevant pleadings, including Plaintiff's original complaint, his responses to the Magistrate Judge's questionnaire, and the FCR. Dkt. No. 18. Defendants collectively answered and asserted the affirmative defense of qualified immunity. Dkt. No. 20. The Court then entered a full scheduling order, including provisions for the completion of discovery. Dkt. No. 25. The Court explained that a full scheduling order was necessary

---

[3] After an independent review of the record and the Magistrate Judge's report, the Court dismissed Plaintiff's claims against 30 John Doe defendants after finding that Plaintiff failed to plead any facts involving the unnamed defendants. Dkt. No. 16. Otherwise, the Court accepted and adopted the Magistrate Judge's findings, conclusions, and recommendations. *Id.*

because Plaintiff's constitutional claims were based on the same central facts as his RLUIPA claims, and qualified immunity does not apply to RLUIPA claims. *Id.*

Now Defendants move for summary judgment and for judgment on the pleadings, arguing that Plaintiff failed to allege sufficient facts in his pleadings or provide sufficient evidence to overcome Defendants' assertion of qualified immunity. Dkt. No. 28. They also submitted a brief in support. Dkt. No. 29.

## 2.    Legal Standards

### A.    Rule 12(c)

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Id.*

Rule 12(b)(6) allows dismissal if a plaintiff "fails to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). The Court must accept well-pleaded factual allegations as true, but the plaintiff must plead "enough facts to state a claim of relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (holding that "to survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief–including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" (quoting *Twombly*, at 555)).

Moreover, "[t]he determining issue is not whether the plaintiff will ultimately prevail on the merits, but whether he is entitled to offer evidence to support his claim." *Priester v.*

4

*Lowndes County*, 354 F.3d 414, 418–19 (5th Cir. 2004) (internal citations and quotation marks omitted). Thus, the Court should "not dismiss a plaintiff's claim unless the plaintiff will not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in his complaint." *Id.*

It is well established that the Court may not make credibility determinations at the pleading stage. *See Wesson v. Oglesby*, 910 F.2d 278, 282 (5th Cir. 1990). "[I]f a prisoner's version of the facts underpinning a civil rights action—as contained in his complaint and elaborated upon, if necessary, in a *Spears* hearing—is inherently plausible and internally consistent, a court may not for purposes of a [Section 1915(e)] dismissal simply choose to believe conflicting material facts alleged by the defendants. It is only for the ultimate trier of fact to decide which party is more believable." *Id.*

B.  **Summary Judgment**

In evaluating a motion for summary judgment, the Court must determine whether, after considering the evidence in the light most favorable to the nonmoving party, a rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). The Court may not weigh the evidence or evaluate the credibility of witnesses. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Any affidavits shall be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify the matters stated." Fed. R. Civ. P. 56(c)(4). So while the "plaintiff's factual assertions are taken as true to determine whether they are legally sufficient to defeat the defendant's motion for summary judgment," *Baldwin v. Dorsey*, 964 F.3d 320, 325 (5th Cir. 2020) (quoting *Morris v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)), the plaintiff bears a

5

heavy burden in overcoming a defendant's good-faith invocation of qualified immunity, *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016).

### C. Qualified Immunity

Section 1983 "provides a claim against anyone who 'under color of any ordinance, regulation, custom, or usage, of any State' violates another's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). "A plaintiff makes out a [Section] 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law.'" *Rich v. Palko*, 920 F.3d 288, 293–94 (5th Cir. 2019) (quoting *Brown v. Miller*, 519 F.3d 23, 236 (5th Cir. 2008)).

But even if a defendant can be shown to have violated another's constitutional rights, the defendant may not be liable under Section 1983. Defendants who perform discretionary duties—such as police officers and jailers—may invoke the affirmative defense of qualified immunity in response to a plaintiff's Section 1983 suit. Qualified immunity applies "when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether the plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Duckett v. City of Cedar Park*, 950 F.2d 272, 276–80 (5th Cir. 1992). In so doing, the court should not assume that plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. *Siegert*, 500 U.S. at 232. Rather, the court must be sure that, if the facts alleged by plaintiff are true, a violation has clearly occurred.

*Connelly v. Comptroller*, 876 F.2d 1209, 1212 (5th Cir. 1989). Even if defendants are alleged to have acted in unison, the court must address the actions of each individually to determine whether qualified immunity applies. *Cass v. City of Abilene*, 814 F.3d 721, 730–31 (5th Cir. 2016); *Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir. 2007); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999).

A mistake in judgment does not cause an officer to lose his qualified-immunity defense. The Supreme Court explained long ago that "[t]he qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341–43 (1986)). And "an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley*, 475 U.S. at 341. Further, that the officer himself may have created the situation does not change the analysis. That he could have handled the situation better does not affect his entitlement to qualified immunity. *Young v. City of Killeen*, 775 F.2d 1349, 1352–53 (5th Cir. 1985).

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and modifications omitted). "There are two ways to demonstrate clearly established law." *Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021). In the typical case, the plaintiff "identif[ies] a case or body of relevant case law in which an officer acting under similar circumstances . . . was held to have violated the [Constitution]." *Id.* (quotation marks and citations omitted). This approach "do[es] not

7

require a case directly on point," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S.731, 741 (2011).

Importantly, qualified immunity is a personal immunity defense, so it only applies to individual-capacity claims. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). And, because Section 1983 does not permit injunctive relief against state officials sued in their individual capacities, the qualified-immunity defense is unavailable when injunctive relief is sought. *See White v. Texas*, 2023 WL 8518211, at *4 (N.D. Tex. Oct. 25, 2023) (collecting cases); *Pearson v. Callahan*, 555 U.S. 223, 242 (2009). Likewise, qualified immunity does not apply to claims under RLUIPA because the statute authorizes only official-capacity claims for injunctive and declaratory relief—it does not permit recovery of monetary damages. 42 U.S.C. § 2000cc-2; *Sossomon v. Lone Star State of Texas*, 560 F.3d 316, 327–29 (5th Cir. 2009) *aff'd sub nom. Sossomon v. Texas*, 563 U.S. 277 (2011).

3.  **Discussion**

The facts here are undisputed because the defendants have failed to produce any summary judgment evidence in their favor. *See generally* Dkt. Nos. 28, 29. On the other hand, the plaintiff's complaint and questionnaire responses include declarations made under penalty of perjury; thus, the Court may consider them as competent summary judgment evidence. *See Al-Raid v. Ingle,* 69 F.3d 28, 32 (5th Cir. 1995) (explaining that when a prisoner-plaintiff's allegations are verified under penalty of perjury, they "are deemed competent summary judgment evidence").

When ruling on a motion for summary judgment, the Court must evaluate summary judgment evidence, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), which only Plaintiff has supplied in this case. *See* Dkt. Nos 1, 12. When a party has failed to dispute a fact, the

Court may consider that fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e); *see also Sport Supply Grp. v. Savage*, No. 3:10-CV-913-O, 2011 WL 13234197, at *5 (N.D. Tex. Dec. 22, 2011).

The crux of the defendants' argument is that Plaintiff failed to plead his claims with enough specificity or prove them with sufficient evidence. The defendants assert that "[w]hatever the policies or failure therein, it does not rise to any constitutional harm on its face." Dkt. No. 17 at 10–13. And they claim they are entitled to qualified immunity because even if TCDC's policies or practices violated Plaintiff's constitutional rights, their actions were objectively reasonable because "[t]here is certainly no case law cited by Plaintiff, nor will there be, wherein such conduct was objectively unreasonable in light of the circumstances and then-existing case law." *Id.* at 12.

Although the defendants were served with copies of Plaintiff's responses to the questionnaire and the Magistrate Judge's FCR, counsel for the defendants fails to address or account for them. Nowhere in the defendants' briefing does counsel acknowledge the specific factual allegations from Plaintiff's questionnaire responses, Dkt. No. 12, or address the Court's prior finding that Plaintiff's factual allegations are sufficient to plausibly state a violation of his clearly established federal rights, Dkt. Nos 14, 16. They appear to disagree with the Court's finding but provide no argument or authority to explain why it was wrong.

Nor does it appear that counsel read the Court's scheduling order. There, the Court expressly noted that qualified immunity would not apply to Plaintiff's RLUIPA claims. Dkt. No. 25. Moreover, qualified immunity is unavailable in cases brought against a municipality or against individuals when injunctive relief is sought. *Pearson*, 555 U.S. at 242. The defendants ignore these well-established principles and conclude without support

9

that they are entitled to qualified immunity on all of Plaintiff's claims—including his RLUIPA claims, his policy claims, and his claims for injunctive or other equitable relief. Dkt. No. 29.

Moreover, the defendants argue that Plaintiff's policy claims must fail because he names only individual officials rather than the municipality. *Id.* But as explained in the Magistrate Judge's FCR and adopted by the Court, Plaintiff maintains official-capacity claims against Defendant Bishop as the policymaker for TCDC for purposes of his policy and RLUIPA claims. Dkt. No. 14 at 4, 10. The defendants fail to acknowledge or address Plaintiff's official-capacity claims. And, again, it is well established that personal immunity defenses like qualified immunity are unavailable for official capacity claims. *Graham*, 473 U.S. at 167.

The defendants also argue that they should prevail because Plaintiff did not cite caselaw to establish that his religious rights were clearly established. But "[t]he Supreme Court has expressly rejected the idea that it is the plaintiff's burden to 'identify the universe of statutory or decisional law from which the [district] court can determine whether the right allegedly violated was clearly established.'" *Santander v. Salazar*, 133 F.4th 471, 478 (5th Cir. 2025) (quoting *Elder v. Holloway*, 510 U.S. 510, 514 (1994)).

Defendants' contention that there exists no precedent clearly establishing Plaintiff's religious rights in this context is plainly wrong. It was clearly established well before Plaintiff filed his complaint that prisoners retain a First Amendment right to the free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Butts v. Martin*, 877 F.3d 571, 584 (5th Cir. 2017). Consistent with these rights, jail officials must provide prisoners a "reasonable opportunity" to exercise their religious beliefs. *Davis v. Davis*, 826

10

F.3d 258, 265 (5th Cir. 2016) (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972)). These rights are "subject to reasonable restrictions stemming from legitimate penological concerns," but the defendants must identify the legitimate governmental interest that justifies the restriction. *DeMarco v. Davis*, 914 F.3d 383, 388–89 (5th Cir. 2019) (remanding prisoner's free-exercise claim because the defendants did not put forward any legitimate penological interest warranting the confiscation of the plaintiff's religious materials).

The same standard applies "[w]hen policies ostensibly designed to honor the Free Exercise rights of inmates are challenged on the basis that they violate the Establishment Clause because the policies favor one or more faith groups over another." *Brown v. Collier*, 929 F.3d 218, 244 (5th Cir. 2019), *as revised* (July 5, 2019). And although "the Supreme Court has not required that each religious denomination receive 'identical facilities or personnel,'" an inmate may prevail on Equal Protection grounds if he demonstrates that similarly situated faiths were afforded superior treatment "at least in part because of, and not simply in spite of, the adverse impact it would have on" disfavored groups. *McAlister v. Livingston*, 348 F. App'x 923, 937 (5th Cir. 2009).

And apart from these established constitutional protections, Plaintiff's right to practice his faith is also firmly protected by statute. RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005)). Under that statute, if a prisoner establishes that a governmental action substantially burdens his religious exercise, the burden shifts to the government to

demonstrate that the imposition of the burden is the least restrictive means of furthering a compelling governmental interest.  *Id.*; 42 U.S.C. § 2000c-2(b).

Importantly, the defendants do not directly dispute any of the facts alleged by Plaintiff.   At most, the defendants suggest that Plaintiff's allegations are nonspecific, and the defendants imply that there is more to the story.  Dkt. No. 29 at 12 (explaining, for example, that Plaintiff "makes no mention . . . that a tablet system containing the Quran is available to all inmates").  Defendants also allude to "routine administration of the jail."  But notably, the defendants offer no alternative version of events.  And they provide no evidence to contradict Plaintiff's assertions.   They submit no documentation of TCDC's written policies or procedures, no affidavits or self-sworn declarations of any defendant or other jail official, and no records related to Plaintiff's complaint.  Moreover, the defendants offer no legitimate penological interest in restricting Plaintiff's access to religious materials and opportunities to worship, nor do they demonstrate that a compelling governmental interest in imposing the burdens Plaintiff describes.

Accepting Plaintiff's well-plead factual allegations as true, the Court again finds that he has plausibly alleged violations of his clearly established rights under the First and Fourteenth Amendments and RLUIPA.  *See* Dkt. No. 14.   And, in his response to the defendants' motion, Plaintiff disputes the implication that the Quran is available on his tablet.[4]  Dkt. No. 30.  He also provides more detail about the burden imposed on his

---

[4] Plaintiff explains that what is available on his tablet is "something called Koran" which is "just someone talking about the Quran." Dkt. No. 30 at 3. He also explains that the Quran is broken up into 30 sections so that a Muslim reads a section every day and completes the entire Quran in 30 days. He states that this practice, which he calls "the 30th," is mandatory during Ramadan. He contends that the "Koran" provided on the tablet "has neither Sajda or 30th marks," so he was prevented from keeping up with his religious obligations. *Id.* He also argues that even if the actual Quran were provided on his tablet, the time restrictions on the devices would prevent him from reading the 30th in accordance with his faith.

religious practice by TCDC's restrictions.  *Id.*  Thus, Plaintiff's allegations are sufficient at this stage to overcome the defendants' assertion of qualified immunity with regard to his individual-capacity claims for monetary relief.  As discussed above, qualified immunity is unavailable for Plaintiff's official-capacity policy claims or his claims under RLUIPA.  For these reasons, the Court denies the defendants' motion for summary judgment and motion for judgment on the pleadings.  Dkt. No. 28.

4. **Conclusion**

For the reasons discussed above, after reviewing the pleadings and the applicable law, the Court concludes that Plaintiff has stated enough facts to state a plausible claim for relief and that genuine issues of material fact remain.  Defendants' motions for summary judgment and judgment on the pleadings are denied.

The Court will schedule the remaining claims for trial by separate order and will refer the matter to a United States Magistrate Judge for mediation before trial.

Dated September 22, 2025.

                                                    James Wesley Hendrix
                                                    United States District Judge